ETS
5/11/2016

RCK/TLF: USAO2012R00670

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

2016 MAY 24  PM 1: 33

CLERK'S OFFICE
AT BALTIMORE

BY _____ DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. |
| | * | |
| REPUBLIC NATIONAL | * | (Wire Fraud Conspiracy, 18 U.S.C. |
| DISTRIBUTING COMPANY, LLC, | * | § 1349; Wire Fraud, 18 U.S.C. § 1343; |
| EUGENE GERZSENYI, JASON | * | Money Laundering, 18 U.S.C. § 1957; |
| LOCKERMAN, and LISA ROBBINS, | * | Aiding and Abetting, 18 U.S.C. § 2; |
| | * | Forfeiture, 18 U.S.C. § 981, 21 U.S.C. |
| Defendants | * | § 853, 28 U.S.C. § 2461, 18 U.S.C. |
| | * | § 982) |
| | * | |

MJG-16-0258

\*\*\*\*\*\*\*

## INDICTMENT

### COUNT ONE

The Grand Jury for the District of Maryland charges that:

**Introduction**

At all times relevant to this Indictment:

1. **REPUBLIC NATIONAL DISTRIBUTING COMPANY, LLC ("RNDC")**, was a limited liability company, formed in Delaware, and registered with the State of Maryland, and was a wholesale distributor of wine and distilled spirits ("liquor") in Maryland and elsewhere in the United States. RNDC had offices in several states, and the Maryland office was located in Jessup, Maryland. RNDC sold and distributed liquor to retail stores in Cecil County and elsewhere in Maryland.

2. **EUGENE GERZSENYI ("GERZSENYI"), JASON LOCKERMAN ("LOCKERMAN"),** and **LISA ROBBINS ("ROBBINS")** were employed by **RNDC**. **GERZSENYI** was the Assistant Director of Operations. **LOCKERMAN** was a salesman. **ROBBINS** was an accounting manager. **GERZSENYI, LOCKERMAN,** and **ROBBINS**

worked in the Jessup, Maryland, offices of **RNDC**, and were authorized to act on behalf of **RNDC**.

3. Maryland and New York liquor distributors operate under a three-tier system of liquor distribution, in which Tier One, the distillers and suppliers of alcoholic beverages, sells to Tier Two, the licensed wholesalers, which, in turn, sells to Tier Three, the licensed retailers, such as liquor stores, bars, and restaurants. New York wholesalers sold to New York retailers, and Maryland wholesalers sold to Maryland retailers. **RNDC** was a Tier Two licensed wholesaler that obtained various brands of alcoholic beverages from various Tier One distillers and suppliers.

4. Northside Liquors, Chesapeake Wine and Spirits, Happy 40, Northeast Liquors, and others ("the Cecil County retailers") were all Tier Three retail liquor stores located in Cecil County, Maryland. **RNDC** sold and delivered liquor to the Cecil County retailers.

5. The Maryland state excise tax rate for liquor distributed in Maryland was approximately $1.50 per gallon. An excise tax applies to the sale of a specific product; it is a tax that is paid by a wholesaler and passed on to the consumer as a part of the price. Maryland state law required that excise taxes were to be paid to the State of Maryland Office of the Comptroller by the wholesale distributor.

6. Any wholesaler transferring or distributing liquor for retail sale in Maryland was required by law (a) to register with the State of Maryland, and (b) to provide monthly reports of the quantities of liquor transferred or distributed for retail sale in the State of Maryland.

7. The New York rate of excise tax for the distribution of liquor in New York was approximately $6.44 per gallon for the State and an additional $1.00 per gallon for the City of New York for a total of approximately $7.44 per gallon. New York state law required that

excise taxes were to be paid to the State of New York by the wholesale distributor.

8. Any wholesaler transferring or moving liquor into New York for eventual retail sale was required by law (a) to register with the State of New York, and (b) to provide monthly reports of the quantities of liquor transferred into the State of New York for retail sale.

### The Conspiracy

9. From at least in or about June 2009 through and including on or about June 5, 2012, in the District of Maryland, and elsewhere, the defendants,

**REPUBLIC NATIONAL DISTRIBUTING COMPANY, LLC,
EUGENE GERZSENYI,
JASON LOCKERMAN,
and
LISA ROBBINS,**

did knowingly conspire, combine, confederate, and agree with each other and with Anil Patel, Dilip Patel, Jatin Patel, Nilesh Patel, Tushar Patel, Bin Luo, Bao Zheng, Alexander Lew, Ting Wei, and others known and unknown to the Grand Jury to knowingly devise a scheme and artifice to defraud New York State, New York City, and registered New York wholesalers, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and promises ("the scheme to defraud") and for the purpose of executing and attempting to execute the scheme to defraud would and did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

### The Object of the Conspiracy

10. A number of New York retailers and their agents were acting as wholesalers, who were transferring and moving liquor from Maryland to New York for retail sale. It was the object of the conspiracy to take money from the New York excise tax and from the New York

distributors, to reduce the New York retailers' and their agents' costs, to increase the sales and profits at the Cecil County retailers and at **RNDC**, and to increase the sales commissions of the salesmen of **RNDC**, including **LOCKERMAN**.

## Manner and Means of the Conspiracy and Scheme to Defraud

11. It was part of the scheme and artifice to defraud that a number of New York liquor retailers, and their agents, used telephones and facsimile machines located in New York to communicate with retail liquor stores that were located in Cecil County, Maryland. These stores included Northside Liquors, Chesapeake Wine and Spirits, Happy 40, Northeast Liquors, and others ("the Cecil County retailers"). These communications consisted of orders to buy cases of wine and liquor placed by the New York liquor retailers and their agents. People working at the Cecil County retailers then took notes of the telephone orders or accepted the orders that arrived by facsimile machine from New York.

12. It was further part of the scheme and artifice to defraud that people working at the Cecil County retailers passed these orders to **RNDC** through salesmen of **RNDC**, including **LOCKERMAN** and others.

13. It was further part of the scheme and artifice to defraud that salesmen of **RNDC**, including **LOCKERMAN**, acting within the scope of their employment, went into the Cecil County retailers about once each week, and read the facsimiles and the notes containing the orders from the New York retailers and their agents. The salesmen of **RNDC**, including **LOCKERMAN**, knew that the liquor that was ordered was intended for retail sale in New York, and the salesmen transmitted those orders for liquor to **RNDC** to be filled.

14. It was further part of the scheme and artifice to defraud that **RNDC** then assembled the ordered liquor in its warehouse, and took it by truck to the Cecil County retailers, where it was

unloaded and held for the New York retailers and their agents, to pick up.

15. It was further part of the scheme and artifice to defraud that the New York retailers, and their agents, then drove vehicles from New York to the Cecil County retailers, where they paid cash for the previously-ordered liquor. The New York retailers and their agents, then loaded the cases of liquor into the vehicles in Maryland and returned, with the liquor, to New York. At no point did the New York retailers or their agents register as importers of liquor, or pay any excise taxes due to New York State and New York City.

16. It was further part of the scheme and artifice to defraud that the New York retailers then sold the liquor, which they and their agents had acquired in Maryland, to customers in New York, knowing that the New York excise taxes had not been paid. This same liquor was available from the New York wholesalers at a higher price.

17. It was further part of the scheme and artifice to defraud that **RNDC** submitted invoices to the Cecil County retailers that included the amounts owed to **RNDC** for the liquor that had been delivered to the New York retailers and their agents.

18. It was further part of the scheme and artifice to defraud that **RNDC, ROBBINS, GERZSENYI,** and **LOCKERMAN** facilitated the payment of funds to **RNDC** for liquor that was moved from **RNDC**, through the Cecil County retailers, to the New York retailers and their agents.

19. It was further part of the scheme and artifice to defraud that the Cecil County retailers deposited in their bank accounts the cash that they had received from the New York retailers and their agents. The Cecil County retailers then wrote checks against these bank accounts to pay to **RNDC** to satisfy the invoices of **RNDC**.

20. It was further part of the scheme and artifice to defraud that employees of **RNDC**

5

then used a scanning device to record images of the checks received from the Cecil County retailers that they received at the Stayton Drive offices of **RNDC**. These check images were then sent by wire to Wells Fargo Bank, which operates in interstate commerce, has its main corporate headquarters in San Francisco, California, and has branches in all 50 states. The imaged checks were then credited to **RNDC's** ***9332 account at Wells Fargo Bank.

21. It was further part of the scheme and artifice to defraud that **RNDC**, the New York retailers and their agents, and the Maryland retailers, all (a) did not register as liquor wholesalers or distributors in the State of New York, (b) did not provide monthly reports of the quantities of liquor shipped into the State of New York for retail sale, and (c) did not pay New York excise taxes.

22. It was further part of the scheme and artifice to defraud that **RNDC** filed false and fraudulent reports to the Maryland State Comptroller's Office, indicating that all liquor sold to the Cecil County retailers was intended for resale in Maryland.

## Overt Acts

23. In furtherance of the conspiracy and to achieve the objectives thereof, the defendants performed and caused to be performed the following overt acts, among others, in the District of Maryland and elsewhere:

   a. On or about August 31, 2011, while at Northside Liquors with others acting within the scope of their employment and on behalf of **RNDC**, **LOCKERMAN** explained to representatives of Northside Liquors about the volume of liquor being sold to liquor smugglers, the amount of money earned from those sales, and that the smugglers were buying the liquor in Maryland because of taxes and prices.

   b. On or about September 19, 2011, at a meeting in the offices of **RNDC** in Jessup,

Maryland, **ROBBINS** and **GERZSENYI**, acting within the scope of their employment, discussed with a representative of Northside Liquors sales of liquor that were going "out the back door" of Northside Liquors to New York, and adding that agents of the Bureau of Alcohol, Tobacco, and Firearms were scrutinizing Northside Liquors.

c. On or about October 25, 2011, **ROBBINS** told a representative of Northside Liquors in a telephone call that she believed Northside Liquors would be making payments to **RNDC** from proceeds of "the backdoor sales" of liquor that were going from Northside Liquors to New York, stating, "I was under the same impression that, what you just said, that we would be making…um…ah…some money off of the…not making money but paying down the debt…off of…the pro…you know, the profit that was going out the back door."

d. On or about December 9, 2011, **GERZSENYI** discussed with representative of Northside Liquors in a telephone call, while **ROBBINS** was in the room with him, a new pricing system, designed to allow Northside Liquors to pay down debt it owed to **RNDC**, that involved **RNDC** charging less for liquor that was to go to the New York buyers and more for the liquor that would be sold to retail customers who came in through the front door.

e. On or about April 15, 2012, **LOCKERMAN** told a manager at Northside Liquors to use the cash proceeds from the New York smugglers to buy a cashier's check to pay to **RNDC**.

18 U.S.C. § 1349

## COUNTS TWO THROUGH FIVE

The Grand Jury for the District of Maryland further charges:

1. Paragraphs 1 through 8 and 10 through 23 of Count One are incorporated here and constitute a scheme and artifice to defraud as described in paragraph 9 of Count One ("the scheme to defraud").

2. On or about the dates set forth below, in the District of Maryland and elsewhere, the defendants,

**REPUBLIC NATIONAL DISTRIBUTING COMPANY, LLC,
EUGENE GERZSENYI,
JASON LOCKERMAN,
and
LISA ROBBINS,**

for the purpose of executing and attempting to execute the scheme to defraud, did knowingly cause to be transmitted in interstate commerce by means of wire communications certain signals, signs, and sounds, as follows:

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| 2 | March 30, 2012 | A facsimile transmission from Chesapeake Wine and Spirits in Maryland to New York to convey pricing for an order for about 59 cases of RNDC liquor. |
| 3 | March 31, 2012 | A facsimile transmission from Chesapeake Wine and Spirits in Maryland to New York to convey pricing for an order for about 100 cases of RNDC liquor. |
| 4 | April 25, 2012 | A facsimile transmission from New York to Northside Liquors in Maryland to place an order for about 14 cases of RNDC liquor. |
| 5 | May 15, 2012 | A facsimile transmission from New York to Happy 40 Liquors in Maryland to place an order for more than 200 cases of RNDC liquor. |

18 U.S.C. § 1343
18 U.S.C. § 2

## COUNTS SIX THROUGH TWENTY-THREE

The Grand Jury for the District of Maryland further charges:

1. Paragraphs 1 through 8 and 10 through 23 of Count One are incorporated here.

2. On or about the dates set forth below, in the District of Maryland and elsewhere, the defendant,

## REPUBLIC NATIONAL DISTRIBUTING COMPANY, LLC,

did knowingly engage and attempt to engage in a monetary transaction by, through, or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is a transfer of funds in the amounts set forth below from Wells Fargo Bank account ****9227 to Wells Fargo Bank account ****9442, such property having been derived from a specified unlawful activity, that is, a wire fraud conspiracy and wire fraud, as charged in Counts One through Five.

| COUNT | DATE | Amount of Liquor Store Check | Amount of Transfer to ****9442 |
|---|---|---|---|
| 6 | August 4, 2011 | $65,565.56 | $8,458,601.96 |
| 7 | August 17, 2011 | $61,420.00 | $6,823,273.38 |
| 8 | August 29, 2011 | $12,039.80 | $7,868,707.34 |
| 9 | September 1, 2011 | $60,168.00 | $7,325,335.33 |
| 10 | October 14, 2011 | $30,541.96 | $7,592,534.47 |
| 11 | November 10, 2011 | $58,777.97 | $9,626,708.88 |
| 12 | November 25, 2011 | $212,387.22 | $12,591,053.62 |
| 13 | December 8, 2011 | $54,285.39 | $9,040,462.72 |
| 14 | December 12, 2011 | $58,694.49 | $9,959,113.77 |
| 15 | December 22, 2011 | $25,574.42 | $8,643,897.89 |
| 16 | December 23, 2011 | $79,533.83 | $7,066,563.96 |
| 17 | January 5, 2012 | $19,787.20 | $9,528,080.96 |
| 18 | January 18, 2012 | $73,319.84 | $44,706,971.66 |
| 19 | February 2, 2012 | $159,653.35 | $8,964,805.43 |
| 20 | March 29, 2012 | $14,186.22 | $7,089,060.18 |
| 21 | April 12, 2012 | $42,006.82 | $8,268,647.62 |
| 22 | May 10, 2012 | $60,612.37 | $7,928,998.72 |
| 23 | May 24, 2012 | $31,550.61 | $6,956,234.95 |

The total amount involved in the transfers to account ****9442 in Counts Six through Twenty-three was $188,439,052.84.

18 U.S.C. § 1957
18 U.S.C. § 2

## FORFEITURE

1. The allegations contained in Counts One through Twenty-three of this Indictment are incorporated here for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and Title 28, United States Code, Section 2461(c).

2. Upon conviction of the offenses in violation of Title 18, United States Code, Sections 1343 and 1349 set forth in Counts One through Five of this Indictment, the defendants,

**REPUBLIC NATIONAL DISTRIBUTING COMPANY, LLC,
EUGENE GERZSENYI,
JASON LOCKERMAN, and
LISA ROBBINS**

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property which constitutes or is derived from proceeds traceable to the offenses. The property to be forfeited includes, but is not limited to, a money judgment in the amount of at least $9,000,000.

3. Upon conviction of the offenses in violation of Title 18, United States Code, Section 1957 set forth in Counts Six through Twenty-three of this Indictment, the defendant,

**REPUBLIC NATIONAL DISTRIBUTING COMPANY, LLC,**

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property involved in such offenses, and any and all property traceable to such property. The property to be forfeited includes, but is not limited to, a money judgment in the amount of $188,439,052.84.

### Substitute Assets

4. If any of the funds described in this indictment as being subject to forfeiture, as a result of any act or omission of the defendants,

    a. cannot be located upon the exercise of due diligence;

11

b.  has been transferred, or sold to, or deposited with a third person;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be subdivided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

18 U.S.C. § 981
18 U.S.C. § 982
21 U.S.C. § 853
28 U.S.C. § 2461

*Rod J. Rosenstein /RCK*
Rod J. Rosenstein
United States Attorney

SIGNATURE REDACTED              5/24/2016
Foreperson                      Date

12